888 A.2d 680

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Jason MILLNER, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 7, 2004.

Decided Dec. 28, 2005.

238

Hugh J. Burns, Philadelphia, Michael Lee Erlich, for the Com. of PA, appellant.

Sheryl Stern Chernoff, Philadelphia, for Jason Millner, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice CASTILLE.

This Court granted review to consider the Commonwealth's claim that the lower courts improperly ordered the suppression of a firearm that police seized following a warrantless entry into a vehicle in which appellee had no reasonable expectation of privacy. Because we hold that the seizure of the firearm did not violate appellee's constitutional rights under the Fourth Amendment and/or Article I, Section 8 of the Pennsylvania Constitution, we reverse the order of the Superior Court to the extent that it affirmed the suppression of the firearm in question.[1]

The prosecution in this case arose from appellee's early morning arrest on September 20, 2000, in West Philadelphia. Appellee was charged with one count each of possession of a controlled substance and possession with intent to deliver a controlled substance (cocaine), and two firearms offenses. Appellee filed a motion to suppress evidence, alleging that the drugs and the firearm which formed the basis for the prosecution were illegally seized, "without ... warrants and without probable cause to do so, and not incident to a lawful arrest and without the consent of [appellee]." A hearing on the motion was held on April 3, 2002 before the Honorable Peter F. Rogers.

At the outset of the suppression hearing, appellee asserted the grounds for suppression as follows: "police were without probable cause to conduct a search of [appellee's] person ..., and conduct a search of the automobile in which a gun was

---

1. As detailed *infra,* the suppression court also excluded cocaine which the court deemed to be the fruit of an illegal search of appellee's person. The Commonwealth does not challenge Superior Court's affirmance of the suppression of the cocaine.

found." N.T., 4/3/02, 3. The Commonwealth responded by calling Philadelphia Police Officer Ernest Miller, who testified that on September 20, 2000, at approximately 2:25 a.m., he and his partner, Officer Malik Abdulhadi, were on routine patrol in their unmarked police vehicle in the area of 53rd and Delancey Streets in West Philadelphia, when they heard gunshots nearby. Officer Miller contacted the police dispatcher and inquired whether there were reports of gunfire in the area. Officer Miller continued driving west when, approximately two minutes later, the dispatcher confirmed that gunfire had been reported at 53rd Street and either Irving or Delancey Street. Officer Miller drove toward that location. As his cruiser turned the corner at 55th and Locust Streets, Officer Miller saw appellee and Steven Brown standing at the driver's side of a brown Cadillac Deville. Officer Miller then saw appellee placing a large hand gun into the back of the Cadillac, through the rear driver's side window. The officers stopped their vehicle, pulled out their badges, approached appellee and Brown and identified themselves as police officers. By that time, appellee and Brown had walked to the rear of the vehicle. When the officers identified themselves, appellee quickly closed the trunk of the vehicle and Brown threw a clear plastic bag to the ground. N.T., 4/3/02, 6–9.

Officer Miller testified that he then conducted a safety pat down of Brown and also retrieved the discarded plastic bag, which contained five small orange packets of what was later determined to be marijuana and six orange packets of what was later determined to be cocaine. Meanwhile, Officer Abdulhadi patted appellee down and recovered from his person 41 packets containing a white chunky substance which was later determined to be crack cocaine.[2] A search incident to appellee's arrest resulted in the seizure of $449 in cash from appellee's person. Officer Miller testified that, when asked to whom the narcotics belonged, appellee and Brown each named the other.

2. Officer Abdulhadi testified and confirmed Officer Miller's testimony that, during the course of a safety pat-down of appellee, he retrieved numerous small items that he believed to be crack cocaine in appellee's front jacket pocket. N.T., 4/3/02, 40.

Officer Miller then held a now-handcuffed appellee and Brown off to the side of the vehicle, while Officer Abdulhadi retrieved the handgun, which was sitting in plain view inside a large, unzipped, multi-colored duffle bag on the backseat of the Cadillac. The firearm was identified as a .9 millimeter Cobra with 33 live rounds in the magazine and one in the chamber. Officer Miller also testified that there was nothing in the vehicle or gym bag that appeared to belong to or otherwise relate to appellee, that appellee did not have a key to the car, and that a record check of the Vehicle Identification Number revealed that the vehicle was not registered to appellee, but to "Jack somebody and Nancy Ayoub." N.T., 4/3/02, 11–13, 36–37.

Appellee elected to take the stand and relate his version of the arrest, which differed in significant respects from the police account. Appellee stated that he left his home at 54th and Cedar Streets in West Philadelphia at approximately 2:00 a.m. and met his friend, Darryl Parish, and another male, Kenny Parker, at 55th and Locust Streets, near a brown Cadillac. Shortly thereafter, Steven Brown exited his apartment on Locust Street and joined the others, who had planned to go to an "after hours spot." Parish and Parker walked up the street, leaving appellee and Brown talking near the Cadillac. Appellee testified that, at that point, a vehicle came around the corner toward them and parked so close that appellee could not go anywhere. Two men exited the vehicle with guns drawn and ordered appellee and Brown to lay face-down on the ground. Appellee testified that the men, who did not immediately identify themselves as police officers, searched his person while he lay in the street and retrieved money and narcotics from his pockets. The officers then handcuffed appellee and ultimately placed him in the police vehicle. It was only at that point that appellee saw Officer Abdulhadi remove the duffle bag from the back seat of the Cadillac, unzip the bag, pull out the handgun, and say, "Look what we have here." On cross-examination, appellee testified that the Cadillac was not his, and that it belonged to Parker. N.T., 4/3/02, 43–52.

After resting his case, appellee's counsel began arguing the lawfulness of the police conduct premised upon appellee's testimony, only to have the suppression court interrupt and state, "You can completely forget [appellee's] version and deal with the Commonwealth's evidence." Counsel complied and framed his legal argument in terms of the Commonwealth's evidence contending, with respect to the cocaine, that police lacked probable cause to search his client; and, with respect to the firearm, that police lacked probable cause to search the Cadillac, had no warrant, and lacked consent to search the vehicle. N.T., 4/3/02, 55–56. The Commonwealth responded first by addressing the seizure of the firearm, arguing that when a police officer views an object from a lawful vantage point, and the incriminating nature of that object is immediately apparent, a warrantless seizure is justified; and that, in any event, appellee had failed to show that he had an expectation of privacy in the Cadillac. N.T., 4/3/02, 58–60. In an extended exchange with the prosecutor, the suppression court indicated it was unconvinced with the government's argument respecting the firearm. Judge Rogers then interrupted the prosecutor before he could argue the legality of the personal search, announcing he was granting the motion as to both the cocaine and the firearm. N.T., 4/3/02, 63–64.

The suppression court did not make formal findings of fact on the record, nor did it state which of the divergent factual accounts it credited. With respect to conclusions of law, the court very briefly stated that it was ordering suppression of the drugs found on appellee's person because "that is a full blown search." With respect to the firearm, the court ordered suppression because the police searched the car without a warrant and appellee had "no obligation . . . or burden to come forth and say that is my car." N.T., 4/3/02, 61–63.

The Commonwealth timely appealed to the Superior Court[3] and filed a timely statement of matters complained of on

3. In its notice of appeal, the Commonwealth certified that the suppression order effectively terminated or substantially handicapped the prosecution, thus perfecting its right to appeal the pretrial order. Pa. R.A.P. 311(d); *Commonwealth v. Templin,* 568 Pa. 306, 795 A.2d 959,

appeal, alleging that appellee lacked a reasonable expectation of privacy in the vehicle; that the firearm seized was in plain view; and that the police acted upon both reasonable suspicion and probable cause. Some months later, on September 27, 2002, Judge Rogers filed an opinion in which he summarized the suppression testimony of all witnesses, noted the "total conflict" in the testimony, and then stated, for the first time, that he had "accepted the testimony of the defense, in large part, and rejected that of the Commonwealth." Trial court slip op. at 6.

In its legal analysis, the court then noted, with respect to the search of appellee's person and the seizure of his cocaine, that under the version of the arrest testified to by appellee, the police "had no lawful basis for even an 'investigative detention' because there were no facts that would give rise to the level of a 'reasonable suspicion.'" In the alternative, the court concluded that, under the Commonwealth's evidence, there was neither probable cause nor reasonable suspicion to support the police officers' actions. With respect to the seizure of the firearm from the Cadillac, the court discussed its understanding of warrantless vehicle searches, ultimately concluding that no exception to the warrant requirement applied. The court failed to address the Commonwealth's argument that appellee lacked an expectation of privacy in the Cadillac. Trial court slip op. at 14–17.

A unanimous panel of the Superior Court affirmed the suppression of both the drugs and the firearm in a memorandum opinion. The panel first noted that, because the suppression court had largely credited appellee's testimony, and that testimony suggested that the police could not have seen appellee holding a gun on the street, the police lacked probable cause or reasonable suspicion to arrest and/or search appellee, Brown and the vehicle. The panel next recognized that "under the credited evidence appellee had no expectation of privacy with respect to the vehicle." Super. Ct. slip op. at 10 n. 3. Nevertheless, the panel determined that it "need not

961 n. 3 (2002); *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985).

address" the Commonwealth's preserved foundational argument that appellee's lack of a reasonable expectation of privacy in the car rendered the suppression of the firearm erroneous. Conflating exclusionary rule issues with proof of the firearm possession charge at trial, the panel concluded that the argument did not have to be addressed because the Commonwealth had failed to meet its "initial burden of proof to demonstrate at the suppression hearing, that there was some [possessory] connection between the appellee and the gun." In the panel's view, because, under the credited evidence, "[t]he Commonwealth did not establish that the appellee actually put the gun into the bag, nor the bag into the car .... [w]e therefore find it unnecessary to address the argument that the appellee maintained no expectation of privacy in the vehicle or its contents." Finally, the panel seemed to suggest that the vehicle search was part and parcel of the preceding search of appellee's person and somehow was "but-for" tainted by that prior illegality:

> But for the illegal detention and search of [appellee,] the police would never have searched the vehicle at all. The search of the vehicle was a mere extension of the already illegal search.

Super. Ct. slip op. at 10–11.

The appellate standard of review of suppression rulings is well-settled. This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law. *E.g. Commonwealth v. Templin,* 568 Pa. 306, 795 A.2d 959, 961 (2002). When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party (here, appellee) and the evidence of the other party (here, the prosecution) that, when read in the context of the entire record, remains uncontradicted. *E.g. Commonwealth v. Mendenhall,* 552 Pa. 484, 715 A.2d 1117, 1118–19 & n. 1 (1998)

Although the facts were sharply disputed at the suppression hearing concerning the stop and search of appellee's person, the relevant facts were undisputed concerning central aspects of the police seizure of the firearm: *i.e.*, it was undisputed that the firearm was seized from the Cadillac, not from appellee's person, and no evidence was forwarded to suggest that appellee had a reasonable expectation of privacy in the Cadillac. Indeed, respecting the latter point, appellee never argued or testified that he had such an expectation of privacy; instead, he stated that the vehicle was not his, but was owned by Kenny Parker. Appellee did not claim that he had a right to use or access the vehicle, or to exclude others (such as the police) from it. Moreover, the Commonwealth's uncontradicted evidence demonstrated that the vehicle was registered to someone other than appellee (or Parker) and that no key, papers or other identification were found which would have indicated that appellee had any legitimate connection to the vehicle. For purposes of our review, we will accept that police had no legal justification to enter the Cadillac and seize this firearm without a warrant; in so doing, we will further assume that the police entry and seizure violated the constitutional rights of any person who at the time possessed a reasonable expectation of privacy in the vehicle. The purely legal issue before this Court is the effect of appellee's lack of an expectation of privacy in the vehicle in such a scenario. This is a legal issue as to which this Court's review is plenary and non-deferential. *See Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455, 459 (2003) (whether defendant had reasonable expectation of privacy is conclusion of law subject to plenary review).

The Commonwealth argues that, under this Court's precedent, appellee had the initial burden at the suppression hearing to demonstrate that he had a reasonable expectation of privacy that was infringed by the police entry into the vehicle and the resulting seizure of the firearm. It is only after the defendant shows that the challenged police conduct implicated such a reasonable expectation of privacy that the Commonwealth is required to prove that the police acted lawfully. *See*

*Commonwealth v. Peterson*, 535 Pa. 492, 636 A.2d 615, 618 (1993). This is so, the Commonwealth notes, because the right to be free from unreasonable searches and seizures is personal in nature; a defendant cannot obtain suppression relief by claiming that the police violated someone else's rights, but not his own. *See, e.g., Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003); *Commonwealth v. Rekasie*, 566 Pa. 85, 778 A.2d 624 (2001). The Commonwealth stresses that this Court has variously characterized the suppression defendant's preliminary burden in this regard as "an essential element" of his case, *Commonwealth v. Hawkins*, 553 Pa. 76, 718 A.2d 265, 268 n. 3 (1998), and "a condition precedent" to the Commonwealth's burden to prove the objective legality of the police conduct. *Peterson, supra.*

In contrast, the Commonwealth argues, the Superior Court cited no authority to support the proposition that the Commonwealth has an "initial burden of proof" to show a connection between the defendant and the firearm before the *Peterson* question of the defendant's expectation of privacy need be reached. The Commonwealth recognizes that to convict appellee of a firearms offense at trial, it will be obliged to prove a possessory connection between appellee and the firearm seized from the Cadillac. However, the Commonwealth emphasizes that this trial burden is not the first order of business at a pre-trial suppression hearing devoted to the question of whether the defendant's personal rights were violated by a police search or seizure, such that an exclusionary rule remedy is available.

The Commonwealth also notes that the Pennsylvania Rules of Criminal Procedure corroborate this ordered and settled focus of the suppression hearing. Thus, Rule 581(A) provides that, "the defendant or defendant's attorney may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Similarly, in addressing the Commonwealth's obligation at the suppression hearing, the Rules provide that the Commonwealth "shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained

in violation of the defendant's rights." Pa.R.Crim.P. 581(H). The focus of the Rules, thus, is upon purported violations of the defendant's rights; the Rules impose no preliminary burden on the Commonwealth of establishing a "connection" between the defendant and the item of evidence the defense seeks to have excluded before that question of a violation of rights may be addressed.

Finally, the Commonwealth addresses the Superior Court's suggestion that the illegal search of appellee's person tainted the later automobile search. The Commonwealth argues that there is no record support for, or recognized legal relevance arising from, the panel's statement that "but for" the illegal search of appellee's person, the police would not have searched the car. The Commonwealth notes that the " 'test for excludability is not whether the evidence would have come to light but for the illegal actions of the police, but rather, whether the evidence has been come at by exploitation of that illegality. . . .' " Brief for Appellant, 15 n. 1, *quoting Commonwealth v. Butler,* 729 A.2d 1134, 1138 (Pa.Super.1999), *appeal denied,* 560 Pa. 668, 742 A.2d 167 (1999), *citing Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Under either version of events testified to at the suppression hearing, the Commonwealth asserts, the search of the vehicle was not causally related to the search of appellee, much less tainted by the personal search: Police testified that they searched the car because they saw appellee place a gun in it even before they approached him; while appellee said police searched the car for no reason apparent to him, and certainly for no reason which derived from their search of his person. The Commonwealth concludes that, because the police did not exploit evidence obtained from the search of appellee's person in order to develop suspicion concerning, or gain access to, the vehicle, the mere fact that appellee was seized (whether lawfully or unlawfully) before the police entered the vehicle provides no rational basis for suppressing the fruits of the separate vehicle search.

Appellee forwards no substantive response to the Commonwealth's claims that the suppression record reveals no

evidence that he had a reasonable expectation of privacy in the car, and that the Superior Court erred in holding that the Commonwealth had a preliminary burden to show a credible connection between appellee and the firearm, and in holding that the vehicle search was "but-for" tainted by the personal search. Instead, appellee submits that this matter should be remanded to the suppression court for the entry of formal findings of fact because the trial court's factual findings "are unclear and insufficient." Appellee notes that the trial court's statements on the suppression record did not indicate which portions of the conflicting testimony it accepted as true, and its statement in its later opinion that it "accepted the testimony of the defense, in large part" did not clarify matters because the court thereby suggested that there were some portions of appellee's testimony that it did not accept. Appellee also notes the trial court's failure to "directly confront" the Commonwealth's preserved argument regarding appellee's lack of an expectation of privacy. For these reasons, appellee submits that a remand is necessary to require the suppression court to issue new and specific findings of fact and conclusions of law pursuant to Rule 581(I) so that "the issue of expectation of privacy can be meaningfully reviewed."

In a reply brief, the Commonwealth opposes remand, noting that appellee made no such request in the Superior Court, and arguing that remand would waste judicial resources, since this Court has a settled standard of review (deriving from *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282, 290 (1976)), which encompasses situations where a suppression court fails to issue specific findings of fact or there is a "lacunae among the findings." *See Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1271–72 (1989) (court's review role is to determine whether record supports suppression court's factual findings; however, where there are no explicit findings, or there is lacunae among findings, *Kichline* standard applies and appellate court will consider evidence presented by prevailing party and so much of evidence for other side, as fairly read in context of record as whole, remains uncontradicted); *see also Commonwealth v. Willis*, 483 Pa. 21, 394 A.2d 519, 521 (1978).

The Commonwealth argues that, in the case *sub judice,* the absence of formal and specific findings of fact does not impede the appellate function because there was no evidence from any source that suggested that appellee had a reasonable expectation of privacy in the Cadillac.

We agree with the Commonwealth that a remand is unnecessary. This Court has reviewed the Superior Court briefs, and the Commonwealth is correct that appellee did not request a remand before that court; thus, the current, belated request arguably is waived. *See* Pa. R.A.P. 302. On the other hand, the question of the sufficiency of the findings below, and the trial court's discharge of those duties necessary to ensure effective appellate review, is a matter of practical and supervisory importance which has led this Court to remand in other cases, irrespective of a specific complaint, or request for remand, from the parties. *See, e.g., Commonwealth v. DeJesus,* 581 Pa. 632, 868 A.2d 379 (2005) (remanding for preparation of adequate trial court opinion); *Commonwealth v. Fulton,* 583 Pa. 65, 876 A.2d 342 (2002) (same); *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999) (same). *Accord Commonwealth v. Jackson,* 464 Pa. 292, 346 A.2d 746, 748 (1975) (*sua sponte* remanding for suppression court to issue findings of fact and conclusions of law respecting claim that confession was coerced and should have been suppressed; noting that claim was not resolvable as matter of law).

Criminal Rule 581(I) mandates that, at the conclusion of the suppression hearing, "the judge shall enter on the record a statement of findings of fact and conclusions of law." We recognize that, unfortunately, it is not uncommon for suppression judges to fail to comply with this directive, and the lapse is then belatedly accounted for, if at all, either in the court's Pa. R.A.P.1925 opinion filed after an appeal is taken by the aggrieved party (which could be months in the case of a Commonwealth appeal or years later in the case of a defense post-verdict appeal) or by the *Kichline* standard of review—a standard which came into existence precisely because of such lapses. We stress, however, the essential purposes served by the Rule, and we disapprove of non-compliance with its unam-

biguous mandate. A specific and contemporaneous announcement of suppression findings of fact and conclusions of law serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling, particularly in cases of contested evidence. A defensible credibility-based decision may dissuade an appeal, whereas a purely legal ruling may make clear that further review is appropriate.[4] Second, it is often the case (for example, where a waiver trial occurs) that the suppression judge is different from the trial judge yet, if there is a conviction, it will be the trial judge who will be responsible for preparation of the Rule 1925 opinion for appeal. Thus, in cases where suppression is denied, a trial occurs, and a conviction ensues, and the defendant seeks to challenge the suppression ruling, the timely and specific ruling the suppression judge is required to enter under Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

Notwithstanding the trial court's violation of our Rule, a remand for compliance would not serve the interests of judicial economy or justice. The Commonwealth willingly poses its argument under the version of the facts most harmful to its position, and argues that it is still entitled to relief as a matter of law with respect to the admissibility of the firearm. In such an instance, we agree that the *Kichline* standard is

4. The disservice attending the failure to make timely findings is illustrated by this case, where the facts were contested. The Commonwealth, which lost at the suppression level, was given no indication that the trial court's decision was at least partly credibility-based until months after it had already filed its notice of appeal, and that belated credibility finding was in the face of a suppression hearing exchange where the trial court told defense counsel to "completely forget [appellee's] version and deal with the Commonwealth's evidence." In its allocatur petition, the Commonwealth abandoned its claim respecting the suppression of the drugs, no doubt because of the effect of the court's credibility announcement, and concentrated solely on the question of the suppression of the firearm, which it believed was controlled by legal, rather than factual, considerations.

sufficient to permit meaningful appellate review, and we see no reason to delay this pre-trial matter further.

■ A proper understanding of the defendant's preliminary burden at a suppression hearing begins with consideration of this Court's seminal decision in *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). In *Sell,* we held that, under Article I, Section 8 of the Pennsylvania Constitution, a criminal defendant charged with a possessory offense has "automatic standing" to pursue a motion to suppress evidence where that evidence (most typically, contraband or firearms) forms the very basis for the possessory crime, and the claim is that the evidence was the fruit of an unlawful seizure. The *Sell* Court viewed its automatic standing holding as significantly more protective of privacy rights than then-emerging Fourth Amendment jurisprudence from the U.S. Supreme Court, which had moved away from a preliminary standing analysis and adopted a substantive approach which analyzed Fourth Amendment claims by focusing on whether the challenged search or seizure implicated a reasonable and legitimate privacy expectation that was personal to the defendant. *See, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The *Sell* Court noted that, under *Rakas*; *Salvucci* and *Rawlings,* the "sole determinant of the scope of protection afforded" under the Fourth Amendment was the defendant's "ability to prove a 'legitimate expectation of privacy' by the 'totality of the circumstances.'" 470 A.2d at 466.

After analyzing Article I, Section 8, and recognizing this Court's authority to find greater protection of privacy rights under our state charter, the *Sell* Court noted:

> We decline to undermine the clear language of Article I, section 8 by making the Fourth Amendment's amorphous "legitimate expectation of privacy" standard a part of our state guarantee against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between "standing"

and "threshold substantive question," *see Rakas, supra* 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the "legitimate expectation of privacy" concept needlessly detracts from the critical element of unreasonable governmental intrusion.

470 A.2d at 468. Notwithstanding the *Sell* Court's rather broad criticism of the substance of the *Rakas/Salvucci/Rawlings* approach to search and seizure questions, its holding was very narrow. The *Sell* case came to this Court as an appeal from a Superior Court ruling which held that the defendant, who was charged with receiving stolen property, but who was not present when police executed the search warrant which led to the seizure of the stolen firearms at his place of business, lacked standing even to challenge the constitutionality of the search. *Sell* held that the "automatic standing" doctrine remained viable in Pennsylvania; and, since receiving stolen property is a possessory offense, *Sell* remanded to the Superior Court for consideration of the merits of the defendant's challenge to the constitutionality of the search. 470 A.2d at 469.

After *Sell*, some confusion arose concerning what burden, if any, the Pennsylvania automatic standing defendant had in a suppression hearing, particularly in light of the U.S. Supreme Court's focus upon a defendant's reasonable expectation of privacy in assessing Fourth Amendment claims. The confusion most notably manifested itself in the Superior Court's decision in *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596 A.2d 172 (1991).[5] Citing to a number of this Court's post-*Sell* decisions, the lead opinion by Judge Beck noted that, in order to prevail upon a suppression motion, the defendant has a preliminary burden to show that the challenged police conduct implicated a reasonable expectation of privacy he had in the area searched or item seized. 596 A.2d at 174–76 & nn. 2–4

5. *See also Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316 (1993), *appeal denied*, 539 Pa. 675, 652 A.2d 1321 (1994); *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42 (1993).

(discussing, *inter alia, Commonwealth v. Copenhefer*, 526 Pa. 555, 587 A.2d 1353 (1991); *Commonwealth v. Oglialoro*, 525 Pa. 250, 579 A.2d 1288 (1990); and *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988)). The concurring opinion, however, construed *Sell* differently, arguing that it had purported to establish a state constitutional rule that was more protective of privacy than the federal reasonable expectation of privacy test. Thus, the concurrence argued that:

> [I]f the reasonableness of a governmental intrusion can be evaluated only when the search or seizure implicated the *particular* defendant's reasonable expectation of privacy, the *Sell* rule is *identical* in all practical respects to the federal approach. I find it hard to believe that *Sell* stands only for the proposition that, when the court inevitably denies the defendant's motion to suppress, it is imperative to announce that there is "no reasonable expectation of privacy" rather than no standing. If the *Sell* Court intended this result, it would have been much easier simply to adopt *Salvucci.*

596 A.2d at 187 (Hoffman, J., concurring) (emphases original). The concurrence thus construed *Sell* as permitting automatic standing defendants to vicariously assert the privacy rights of others in some instances.

■ This Court granted further review in *Peterson* and specifically addressed the interplay of standing principles and the role of the substantive "reasonable expectation of privacy" analysis. Our unanimous opinion rejected the Superior Court concurrence's construction of *Sell* and made it explicitly clear that *Sell's* automatic standing holding did not absolve the suppression defendant of his obligation to demonstrate that the challenged police conduct implicated a reasonable expectation of privacy that he personally possessed:

> Standing denotes the existence of a legal interest. In the context of this case, the term refers specifically to appellant's right to have the merits of his suppression motion adjudicated without a preliminary showing of ownership or possession in the premises or effects seized. *Sell, supra,* established the existence of this right unequivocally, holding

that a charge of possessory offenses is sufficient, without more, to confer standing.... [A]t no time was appellant's standing in this matter contested. However, having had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to do so, he must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article 1, Section 8, to be "secure ... against unreasonable searches and seizures." *See, Commonwealth v. Brundidge,* 533 Pa. 167, 170, 620 A.2d 1115, 1118 (1993); *Commonwealth v. Oglialoro,* 525 Pa. 250, 256, 579 A.2d 1288, 1290–1 (1990). He must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises. *See, Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989) *alloc. denied,* 525 Pa. 576, 575 A.2d 108 (1989 [1990]). The Superior Court concurrence failed to distinguish between the necessity for a preliminary demonstration of proprietary or possessory interest, a necessity which does not exist in Pennsylvania, and the necessity of demonstrating the merits of a suppression claim. Appellant's automatic standing does not divest him of the evidentiary responsibility to show that the warrantless entry into the storefront by law enforcement personnel [the police conduct at issue] violated a reasonable and legitimate expectation of privacy.

636 A.2d at 617–18. Later decisions from this Court have reaffirmed *Peterson's* approach to the suppression defendant's burden without qualification. *E.g. Commonwealth v. Hawkins,* 553 Pa. 76, 718 A.2d 265, 267 (1998) ("essential effect" of automatic standing doctrine "is to entitle a defendant to an adjudication of the merits of a suppression motion.... In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest

was 'actual, societally sanctioned as reasonable, and justifiable.'") (citations omitted) (thoroughly discussing evolution of doctrine); *Commonwealth v. Gordon,* 546 Pa. 65, 683 A.2d 253, 256–59 (1996) (particularly emphasizing defendant's burden to prove both subjective expectation of privacy and that subjective expectation is one which society is willing to respect as legitimate). In addition, this Court has specifically rejected the notion that Article I, Section 8 should be construed as permitting the vicarious assertion of the privacy interests of others in order to, *inter alia,* "dissuade intentional, intrusive police conduct." *Hawkins,* 718 A.2d at 268–70. In the wake of *Peterson* and its progeny, it is clear that, notwithstanding the *dicta* in *Sell* criticizing the substantive federal approach to Fourth Amendment claims, under Article I, Section 8, no less than under the Fourth Amendment, a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.

As we have noted above, in the case *sub judice,* appellee offered no evidence to demonstrate a personal privacy interest in the vehicle, the search of which formed the basis for his claim that the firearm should be excluded. Appellee produced no evidence that he owned the vehicle, nor did he produce evidence which remotely suggested that he had any other connection to the vehicle which could form the basis for so much as a subjective expectation of privacy. In addition, there was nothing in the Commonwealth's evidence upon which appellee could rely to prove that he had an expectation of privacy in the Cadillac in question. The police testimony established that nothing was found in the vehicle, on appellee's person, or through a record search, to suggest any lawful connection to the car. Finally, the fact that police testified to seeing appellee put the firearm in the vehicle—a fact appellee denied—alone does not establish both a subjective and reasonable expectation of privacy in a vehicle to which he had no other legitimate connection. *Cf. Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353, 1356 (1991) ("A defendant's attempt to secrete evidence of a crime is not synonymous with

a legally cognizable expectation of privacy. A mere hope for secrecy is not a legally protected expectation."). Indeed, the facts at bar suggest far less of a connection with the area searched than other cases in which this Court has held that an expectation of privacy did not exist, *i.e.,* cases where the defendant was actually physically present inside the area searched. *See Gordon,* 683 A.2d at 258 (presence in and use of abandoned property); *Peterson,* 636 A.2d at 618–19 (presence in drug gate house). *Accord Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989), *appeal denied,* 525 Pa. 576, 575 A.2d 108 (1990) (presence in abandoned house used for drug operation) (cited with approval in *Peterson*).

In short, appellee failed to establish a subjective expectation of privacy in this particular vehicle, much less one that society would accept as reasonable, such that the warrantless police entry implicated his own personal privacy rights. In such a circumstance, there was no need for the Commonwealth to establish the lawfulness of the police entry into the vehicle and the seizure of the firearm, and there was no basis upon which the lower courts could properly order its suppression. *E.g. Peterson,* 636 A.2d at 619 (in light of defendant's failure to prove legitimate expectation of privacy, no need to address defendant's claim of illegal police conduct).

The Superior Court panel recognized that appellee proved no reasonable expectation of privacy in the vehicle, and yet deemed it unnecessary to pass upon the Commonwealth's substantive argument. The panel cited two reasons for this conclusion: (1) that the Commonwealth "did not meet *its* initial burden of proof to demonstrate ... that there was some connection between the appellee and the gun;" and (2) that the vehicle search was "but-for" tainted by the search of appellee's person. Neither reason is persuasive.

The panel cited no authority for its conclusion that the Commonwealth had a preliminary suppression burden to "connect" appellee to the firearm before appellee had to show that his own rights were implicated by its seizure; appellee has cited none; and our research has revealed none. Given

the purpose of a motion to suppress, we reject the innovative burden the panel would impose upon the Commonwealth. Absent a successful motion to suppress, or its equivalent, the Commonwealth like any other party is entitled to attempt to introduce at trial any and all relevant evidence. The point of a motion to suppress physical evidence is to **eliminate** certain tangible evidence from the Commonwealth's trial armamentarium, on grounds that the manner of the government's acquisition of that evidence involved a violation of the defendant's constitutional rights. Whether that evidence is to be suppressed does not depend upon whether the Commonwealth has committed itself to introduce the evidence at trial, or how important it is to the Commonwealth's case, or how strong the evidence is, or whether it is subject to trial contradiction, explanation or rebuttal; the focus is upon its manner of acquisition, and how that manner of acquisition implicated the defendant's constitutional rights. By the same token, an unsuccessful motion to suppress does not restrict the defendant from arguing at trial that the evidence should be excluded, or discounted by the factfinder, on grounds unrelated to the constitutionality of its acquisition. *See* Pa.R.Crim.P. 581(J). Thus, the defendant is free to argue that the evidence is irrelevant (e.g., because not sufficiently "connected" to him or to a material issue), or that its prejudicial effect outweighs its probative value, etc.

Although the question of the defendant's "connection" to a piece of incriminating evidence may be relevant to his establishing an expectation of privacy relating to the seizure of the item, the defendant's connection is not ineluctably essential to the Commonwealth's role at a suppression hearing. By filing the suppression motion and identifying the items he seeks to have suppressed, it is the defendant, not the Commonwealth, who places the evidence, and the lawfulness of its seizure *vis a vis* his personal rights, at issue. In a case involving a possessory charge such as this one, it is true that the Commonwealth will not prevail at trial unless it can prove that appellee possessed the firearm. It may also be that appellee will challenge whatever evidence the Commonwealth

musters at trial to prove appellee's "connection" to the firearm. But, nothing in existing jurisprudence, law, or even logic obliged the Commonwealth to "prove" that fact at the outset of the suppression hearing, before it could object to appellee seeking the suppression of a firearm based upon a seizure which did not implicate his own constitutional rights. The Superior Court erred in *sua sponte* manufacturing such a requirement. We remind the Superior Court that its jurisprudential task "is to effectuate the decisional law of this Court, not to restrict it through curtailed readings of controlling authority." *Behers v. Unemployment Compensation Bd. of Review,* 577 Pa. 55, 842 A.2d 359, 367 (2004).

The panel's suggestion (also unsupported by citation to authority) that it did not have to pass upon the Commonwealth's argument because the vehicle search was tainted by the preceding search of appellee's person is equally faulty. As the Commonwealth has accurately noted, under both versions of events testified to below, the firearm made its way into the car before police approached appellee, and independently of that confrontation. Whether police entered the car because they saw appellee place the firearm there before the encounter (police version) or for no apparent reason (appellee's version), the search of the vehicle in which appellee had no expectation of privacy was not the "poisoned fruit" of the search of appellee's person. Accordingly, there was no basis for suppression.

For the foregoing reasons, the order of the Superior Court is reversed to the extent it affirmed the suppression of the firearm seized, and this matter is remanded to the trial court for proceedings consistent with this Opinion.

Justices SAYLOR, EAKIN and BAER join the opinion.

Justice NIGRO did not participate in the consideration or decision of this case.

Chief JUSTICE CAPPY files a concurring opinion in which Justices NEWMAN and BAER join.

Chief Justice CAPPY concurring.

I join the majority opinion. I write separately only to note that our decision today should not, in any way, be interpreted to represent support for the broad proposition that passengers in a vehicle or those with something other than ownership interests in a vehicle cannot establish a legitimate expectation of privacy in the vehicle searched. *Cf. Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128, 131 (1995); *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035, 1038 (1987) (indicating that "the driver and passengers do not forfeit all reasonable expectation of privacy, and may not be subjected to unfettered governmental intrusion"); *see also Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (noting that passengers possess the same "reduced expectation of privacy" in vehicles as drivers). Indeed, we have repeatedly indicated that the focus of the inquiry in such situations is not whether the person has a property right in the area searched, but rather, focuses on the person's legitimate expectation of privacy in the place searched. *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552 (1999). Read in this light, this case stands for the limited proposition that, similar to Appellant Williams in *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 543 (2001), Appellant did not establish a subjective expectation of privacy in the vehicle. Thus, he is not entitled to relief on his suppression motion.

Justices NEWMAN and BAER join this concurring opinion.