J-A23008-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JONATHAN H. DELACRUZ, | : | |
| | : | |
| Appellee | : | No. 1242 WDA 2013 |

Appeal from the Order entered July 29, 2013,
Court of Common Pleas, Cambria County,
Criminal Division at No(s): CP-11-CR-0000538-2012,
CP-11-CR-0000540-2012 and CP-11-CR-0000541-2012

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED NOVEMBER 07, 2014**

The Commonwealth of Pennsylvania appeals from the July 29, 2013 order entered by the Cambria County Court of Common Pleas granting, in part, the motion to suppress filed by Jonathan H. Delacruz ("Delacruz"). After reconsideration,[1] we reverse.

The facts underlying this appeal, summarized by the suppression court, are as follows:

> Detective Kevin Price (Price) testified that he is a detective with the Cambria County District Attorney's Office and the field supervisor of the Cambria County Drug Task Force (Task Force). Price testified, in conformity with the affidavit of probable cause (Affidavit) attached to the search warrant applications, that during an investigation into the sale of crack cocaine in the Johnstown area the Task Force became aware that Delacruz and Kevin

---

[1]  **See infra**, n.2.

Coggins (Coggins) may be involved in the drug trade. The Task Force initiated surveillance of the pair along with their known or suspected residences at 171 State Street and 1937 Minno Drive[FN] both in Johnstown. The Task Force eventually became aware that Samantha Zack (Zack) was living with Delacruz on State Street but listed her address as Rear 150 Bucknell Avenue with her probation officer.

During the surveillance[,] the Task Force learned that Delacruz owned a black Mazda registered to him at a Haynes Street address that was frequently driven by Coggins and was renting a white Ford Taurus that he would drive. The Task Force utilized two confidential informants (CI) to make a total of five controlled drug buys from Delacruz and Coggins.

**Buy 1:** On February 6, 2012[,] a CI called Delacruz's phone and spoke with Coggins who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from or returned to. The substance obtained from Coggins tested positive as cocaine.

**Buy 2:** On February 10, 2012[,] a CI called Delacruz who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Delacruz arrived in the white Ford, the transaction took place and Delacruz left. The Task Force did not know where Delacruz came from or returned to but did observe him later at the State Street address. The substance obtained from Delacruz tested positive as cocaine.

**Buy 3:** On February 15, 2012[,] a CI called Delacruz's phone who arranged to meet the CI for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from but followed him to 3[]Red's Bar following the transaction. During the

transaction[,] surveillance was being conducted on the State Street address and Zack was observed there. The substance obtained from Coggins tested positive as cocaine.

**Buy 4:** On February 16, 2012[,] a CI called Delacruz's phone who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from but followed him to the Bucknell address following the transaction. During the transaction[,] surveillance was being conducted on the State Street address and both Delacruz and Zack were observed there. The substance obtained from Coggins tested positive as cocaine.

**Buy 5:** On February 25, 2012[,] a CI called Delacruz's phone who informed the CI he was out of town and told him to call Coggins. The CI then called Coggins who arranged to meet the CI for the purpose of selling him crack cocaine. Coggins was observed leaving the State Street address in the black Mazda and driving to the Minno Drive location. Coggins exited the vehicle there, was not observed entering the building, reentered his vehicle and drove to Virginia Avenue where the transaction was to occur. The transaction took place, Coggins left and was observed driving to the Bucknell address and entering the residence there. He then left Bucknell and returned to State Street. The substance obtained from Coggins tested positive as cocaine.

Based upon these transactions and surveillance[,] Price filed three applications for search warrants, one each for the Bucknell, State Street, and Minno Drive addresses. Attached to each application was an identical Affidavit of Probable Cause. A review of the Affidavit reveals: that neither Delacruz's white Ford nor Zack's vehicle was ever seen at the Bucknell address; that Delacruz, Zack, and Coggins are listed as the '[o]wner, occupier, or possessor' of each of

the properties; and that Coggins was observed on one occasion driving to the Minno Drive address to pick up mail but was not seen entering the residence. Further, the Affidavit includes no information that any member of the Task Force or any CI was told by Delacruz or Coggins that drugs were stored at any of the locations or that they personally observed drugs at those places.

Delacruz moved to suppress the evidence obtained from all three warrants as to him[,] arguing that no connection or nexus [exists] between his street activities and those locations. Following a hearing on the motion held July 3, 2013[,] the Court directed the parties to file briefs. After review of the briefs, hearing testimony, and law[,] the Court entered its July 29, 2013, Order denying the motion as to the State Street and Minno Drive properties and granting it as to the Bucknell address.

_____

[FN] Delacruz listed the Minno Drive address as his residence but was known to be living at the State Street address.

Suppression Court Opinion, 10/28/13, at 2-4 (footnote included in the original; other footnote omitted).

The Commonwealth filed a timely notice of appeal, certifying therein that the suppression court's order terminated or substantially handicapped the prosecution pursuant to Pa.R.A.P. 311(d). It thereafter complied with the trial court's order for a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). It raises one issue for our review: "Did the suppression court err in suppressing evidence found via a search warrant served at 150 Bucknell Avenue, Rear, Johnstown, PA?" Commonwealth's Brief at 5.

We review a decision concerning a motion to suppress to discern whether the suppression court's findings of fact are supported by the record and whether the legal conclusions drawn therefrom are correct. *Commonwealth v. Thompson*, 93 A.3d 478, 484 (Pa. Super. 2014) (citation omitted). We are not bound by the suppression court's legal conclusions, but must apply the law to the supported facts found by the suppression court. *Id.* The suppression court's conclusions of law are subject to our plenary review. *Id.*

The Commonwealth presents its argument in two sub-parts: (1) the suppression court erred by finding that Delacruz had a privacy interest in the Bucknell address that permitted him to challenge the search of that location (Commonwealth's Brief at 10-16), and (2) the suppression court erred by finding that the warrant request contained insufficient probable cause to connect Delacruz to the Bucknell address (*id.* at 16-26). We begin with the first sub-part, which we find dispositive for the following reasons.[2]

---

[2] We initially found this sub-part waived based upon the Commonwealth's failure to challenge Delacruz's claimed privacy interest at the suppression hearing, raising it instead in a responsive post-submission brief filed three weeks after the suppression hearing. *See* Brief in Opposition to Defendant's Motion to Suppress, 7/26/13, at 10-11. The Commonwealth filed a petition for reconsideration, therein citing for the first time to a footnote in a 1998 Supreme Court decision that states that a challenge to the defendant's privacy interest is not subject to waiver for the Commonwealth's failure to timely challenge the adequacy of the defendant's stated privacy interest. *See Commonwealth v. Hawkins*, 718 A.2d 265, 268 n.3 (Pa. 1998). We granted reconsideration.

The record reflects that in his motion to suppress and at the suppression hearing itself, Delacruz claimed he had a privacy interest in the Bucknell address by virtue of the Commonwealth identifying Delacruz as an "owner, occupant or possessor" of the residence on the face sheet of the warrant request associated with that property. Motion to Suppress Physical Evidence, 4/26/13, at 2 n.1; N.T., 7/3/13, at 47; *see also* Defendant's Exhibit C. In his post-hearing motion, Delacruz further argued in the alternative that the inclusion of Delacruz as an "owner, occupant or possessor" of the Bucknell address constituted a "material misrepresentation of fact," pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Brief in Support of Motion to Suppress Physical Evidence, 7/22/13, at 11-13.

Although recognizing that Delacruz was required to establish that he had a legitimate expectation of privacy, the trial court failed to address in its written opinion whether Delacruz satisfied his burden of proof. *See* Suppression Court Opinion, 10/28/13, at 5. We need not remand the case for a supplemental opinion addressing this issue, however, as the question of whether a defendant had an expectation of privacy in an area searched is purely a legal question for which our review is "plenary and non-deferential." *Commonwealth v. Millner*, 888 A.2d 680, 686 (Pa. 2005) (citation omitted).

Under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, a defendant is

required to prove that he or she has a legitimate expectation of privacy in the area searched in order to prevail on a request to suppress the evidence seized.[3] **_Commonwealth v. Bostick_**, 958 A.2d 543, 551 (Pa. Super. 2008).

> An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.
>
> * * *
>
> [F]actors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include: (1) possession of a key to the premises; (2) having unlimited access to the premises; (3) storing of clothing or other possessions on the premises; (4) involvement in illegal activities conducted on the premises; (5) ability to exclude other persons from the premises;

---

[3] Pursuant to Pennsylvania constitutional jurisprudence, a criminal defendant charged with a possessory offense has automatic standing to challenge a search, entitling him or her to "an adjudication of the merits of a suppression motion." **_Hawkins_**, 718 A.2d at 267. "In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was actual, societally sanctioned as reasonable, and justifiable." **_Id._** (citation and quotation omitted).

and (6) expression of a subjective expectation of privacy in the premises.

*Id.* at 552, 553 (citations omitted).

The record reflects that in the portion of the search warrant seeking the name of the owner, occupant or possessor of the Bucknell address, the Commonwealth listed Zack, Coggins and Delacruz. Defendant's Exhibit C. This by itself does not create a legally cognizable privacy interest in Delacruz, as it is not an actual or a subjective privacy interest or one that society would find to be reasonable. *See Bostick*, 958 A.2d at 552. As stated by the Commonwealth (and conceded by Delacruz), the argument here is that the Commonwealth should be estopped from claiming that Delacruz lacks a privacy interest based upon its representation in the warrant. *See* Commonwealth's Brief at 13. Neither the trial court nor Delacruz cited any law, below or on appeal, that recognizes a privacy interest by estoppel, and our research likewise has revealed none.

There was no evidence of record from which the court could find that Delacruz had a privacy interest in the Bucknell property. To the contrary, Detective Kevin Price testified as follows: "The Bucknell address, the only common thread we had was we saw Coggins going there. *We never saw Delacruz go there*, but we saw Coggins go there on two different occasions. Samantha Zack's father owns the property. Samantha Zack is living with Delacruz." N.T., 7/3/13, at 38 (emphasis added). Moreover,

Delacruz presented no evidence that he had a key to the Bucknell address, had access to the premises, stored clothing or possessions there, had the ability to exclude people from the residence, or that he believed he had an expectation of privacy there. **See Bostick**, 958 A.2d at 553. Furthermore, although the Commonwealth purports to connect contraband found at the Bucknell residence to Delacruz, there was no evidence that Delacruz conducted any illegal activity on the premises. **See id.** As such, we agree with the Commonwealth that Delacruz failed to satisfy his burden of proving that he had a legitimate expectation of privacy in the Bucknell address such that he was entitled to suppression of the contraband seized from that location.[4]

Delacruz also belatedly raised a **Franks v. Delaware**[5] argument below, claiming that the inclusion of his name as an "owner, occupant or

---

[4] In his responsive brief filed in this Court on appeal, Delacruz states that he did not present this evidence "because a challenge to [his] privacy interest was not raised by the Commonwealth at the suppression hearing." Delacruz's Brief at 12. However, to be entitled to suppression of evidence, the defendant has the burden to prove that he or she has a legitimate expectation of privacy in the area searched. **Commonwealth v. Caban**, 60 A.3d 120, 126 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013)). As stated above, a challenge to the defendant's failure to satisfy this burden of proof is not waivable for failing to timely challenge it before the suppression court. **Hawkins**, 718 A.2d at 268 n.3.

[5] Our Supreme Court explained the holding of **Franks v. Delaware** as follows:

> The United States Supreme Court recognized the right to challenge an affidavit's veracity in **Franks v. Delaware**, […] which addressed whether a

possessor" of the Bucknell residence was a material misstatement of fact knowingly and deliberately made by the affiant with reckless disregard for the truth, resulting in the absence of probable cause for the issuance of the warrant. Brief in Support of Motion to Suppress Physical Evidence, 7/22/13, at 11-13; *see also* Delacruz's Brief at 14. We question whether the failure to raise this argument in his motion to suppress results in its waiver, especially in light of the fact that the trial court did not address this

---

defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual averments in an affidavit of probable cause. The Court held where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request. The Court emphasized the defendant's attack on the affidavit must be 'more than conclusory and must be supported by more than a mere desire to cross-examine [ ]'; the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. If the defendant meets these requirements, but the remainder of the affidavit's content is still sufficient to establish probable cause, no hearing is required. If the affidavit's remaining content is insufficient, a hearing is held, at which the defendant must establish, by a preponderance of the evidence, the allegation of perjury or reckless disregard. If he meets this burden, the affidavit's false material is disregarded; if its remaining content is insufficient to establish probable cause, the search warrant is voided, and the fruits thereof are excluded.

*Commonwealth v. James*, 69 A.3d 180, 188 (Pa. 2013) (internal citations to *Franks* omitted).

argument in its written opinion.  Nonetheless, we are compelled to conclude that Delacruz's failure to establish that he had a legitimate expectation of privacy in the area searched precluded relief on his ***Franks v. Delaware*** claim.  ***See Commonwealth v. Hawkins***, 718 A.2d 265, 268 n.3 (Pa. 1998) (it is "an essential element" for a defendant seeking suppression to satisfy the burden of proving that he or she has a legitimate expectation of privacy); ***Commonwealth v. Caban***, 60 A.3d 120, 126 (Pa. Super. 2012), *appeal denied,* 79 A.3d 1097 (Pa. 2013) ("To prevail in a challenge to the search and seizure, […] a defendant accused of a possessory crime must [] establish, as a threshold matter, a legally cognizable expectation of privacy in the area searched.").

As Delacruz failed to provide any evidence that he had a legitimate expectation of privacy in Rear 150 Bucknell Avenue, we conclude that the trial court erred by granting suppression of the evidence recovered by the police during the search of that property.  We therefore reverse the trial court's order granting suppression as to the contraband obtained from the Bucknell address and remand the case for further proceedings.

Order reversed.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

- 11 -

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/7/2014</u>